2006 UT App 466

**Quinn MILLET, Plaintiff and Appellant,**

v.

**LOGAN CITY; D's Bridgerland Apartments, Inc.; and Cache Auto Booting Service, Defendants and Appellees.**

No. 20051106–CA.

Court of Appeals of Utah.

Nov. 24, 2006.

Rehearing Denied Dec. 19, 2006.

Christopher L. Daines and David R. Daines, Chris Daines Law, Logan, for Appellant.

David L. Church, Blaisdell & Church PC, Salt Lake City, and Miles P. Jensen, Olson & Hoggan, and Kymber D. Housley, Logan City Prosecutor, Logan, for Appellees.

Before Judges GREENWOOD, BILLINGS, and McHUGH.

OPINION

McHUGH, Judge:

¶ 1 Plaintiff Quinn Millet challenges the trial court's grant of Defendants D's Bridgerland Apartments, Inc., Cache Auto Booting Service's, and Logan City's, motions to dis-

miss for failure to state a claim upon which relief can be granted under rule 12(b)(6) of the Utah Rules of Civil Procedure. *See* Utah R. Civ. P. 12(b)(6). Specifically, Millet asserts that the trial court erred in determining that the state-action requirement, necessary for a procedural due process claim under the Fourteenth Amendment, had not been met. We affirm.

## BACKGROUND

¶2 On November 15, 2000, the Logan Municipal Council adopted "An Ordinance Amending Logan Municipal Code Section 10.52.040 to Include Regulation of Booting Practices in the City of Logan" (the Ordinance). *See* Logan, Utah, Ordinance 2000–75 (2000), *codified at* Logan, Utah, Code § 10.52.040. The Ordinance makes it unlawful for private property owners to immobilize vehicles trespassing upon their real property unless the owner first complies with the regulations contained within the Ordinance. *See id.* § 10.52.040(D).

¶3 On September 10, 2003, Cache Auto Booting Service (Cache) immobilized Millet's vehicle by attaching a "boot" in a parking lot owned by D's Bridgerland Apartments, Inc. (Bridgerland). Millet was required to pay fifty dollars to have the boot removed. At the time, Millet was a resident in Bridgerland's apartment complex located in Logan. Bridgerland contracted with Cache to enforce private parking restrictions at the apartment complex. Several months after the booting, Millet contacted Cache seeking a refund of the fees collected to remove the device. Cache refused to issue a refund and cited the Ordinance as a reference for the legality of the booting practice.

¶4 After failing to obtain a refund, Millet brought a single claim against Logan, Bridgerland, and Cache under Title 42, section 1983 of the United States Code alleging that his Fourteenth Amendment right to procedural due process had been violated when Bridgerland and Cache (collectively, the Landlord) acted within the regulations imposed by the Ordinance and deprived him of his vehicle without a pre- or post-deprivation hearing. Defendants moved to dismiss under rule 12(b)(6) of the Utah Rules of Civil Procedure asserting, among other things, that Millet's claim failed because he had not alleged any facts that could support the finding of state action necessary for a claim under the Fourteenth Amendment. Before a decision was entered on the motions to dismiss, Millet moved for partial summary judgment. After full-briefing and oral argument on the partial summary judgment motion and the motions to dismiss, the trial court issued a single memorandum decision denying partial summary judgment and granting Defendants' motions to dismiss. The court determined that Millet's complaint did not allege facts sufficient to support a finding of state action under the Fourteenth Amendment. We agree.

## ISSUE AND STANDARD OF REVIEW

¶5 On appeal, Millet asserts that the trial court improperly granted Defendants' motions to dismiss for failure to state a claim under rule 12(b)(6) of the Utah Rules of Civil Procedure.[1] *See* Utah R. Civ. P. 12(b)(6). "A trial court's decision granting a rule 12(b)(6) motion to dismiss a complaint ... is a question of law that we review for correctness, giving no deference to the trial court's ruling." *Oakwood Vill. L.L.C. v. Albertsons, Inc.*, 2004 UT 101, ¶9, 104 P.3d 1226. When reviewing for correctness, "we accept the factual allegations in the com-

---

1. Because the trial court's memorandum decision addresses both the denial of Millet's partial summary judgment motion as well as the grant of Defendants' motions to dismiss under 12(b)(6), it is, at times, difficult to determine if the trial court considered "matters outside the pleadings" requiring that the motions to dismiss be treated as motions for summary judgment under Utah Rule of Civil Procedure 56. *See* Utah R. Civ. P. 12(b) ("If ... matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary

judgment...."). However, because we affirm the trial court without considering matters outside the pleadings, we apply the standard of review associated with a motion to dismiss under rule 12(b)(6). *See Oakwood Vill. L.L.C. v. Albertsons, Inc.*, 2004 UT 101, ¶12, 104 P.3d 1226 ("If a court does not exclude material outside the pleadings and fails to convert a rule 12(b)(6) motion to one for summary judgment, it is reversible error unless the dismissal can be justified without considering the outside documents.").

plaint as true and interpret those facts and all inferences drawn from them in the light most favorable to the plaintiff as the non-moving party." *Id.* "A motion to dismiss is appropriate ... where it clearly appears that the plaintiff[ ] would not be entitled to relief under the facts alleged or under any set of facts they could prove to support their claim." *Baker v. Angus,* 910 P.2d 427, 430 (Utah Ct.App.1996).

## ANALYSIS

■ ¶ 6 Millet alleges that he was deprived of his constitutional right to procedural due process as guaranteed by the Fourteenth Amendment when Cache, acting on behalf of Bridgerland and complying with the regulations contained in the Ordinance, immobilized his vehicle and charged him fifty dollars to remove the boot without providing either a pre- or post-deprivation hearing. The Fourteenth Amendment of the United States Constitution prohibits the States from "depriv[ing] any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "Because the Amendment is directed at the States, it can be violated only by conduct that may be fairly characterized as 'state action.'" *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 924, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982). Plaintiffs may seek a remedy for violation of their right to due process by asserting a claim under title 42, section 1983 of the United States Code. *See* 42 U.S.C. § 1983 (2000).

■ ¶ 7 To state a claim under section 1983, plaintiffs must make two allegations. First, they must allege " 'that they have been deprived of a right "secured by the Constitution and the laws" of the United States.'" *Lugar,* 457 U.S. at 930, 102 S.Ct. 2744 (quoting *Flagg Bros., Inc. v. Brooks,* 436 U.S. 149, 155–56, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978)). And second, they must allege that the deprivation was caused by a party acting "under color of state or territorial law." *Gomez v. Toledo,* 446 U.S. 635, 640, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980).

■ ¶ 8 Millet alleges he was deprived of his constitutional right to procedural due process as secured by the Fourteenth Amendment. To state a claim for a deprivation of due process, a party must allege three elements: (1) that through state action she was (2) deprived of a constitutionally recognized life, liberty, or property interest, (3) without an opportunity to be heard at a meaningful time and in a meaningful manner. *See* U.S. Const. amend. XIV, § 1; *cf. Mathews v. Eldridge,* 424 U.S. 319, 332–33, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). Here, it is clear that Millet has a constitutionally recognized property interest in his automobile and the funds expended to remove the boot. *See City of Los Angeles v. David,* 538 U.S. 715, 717–18, 123 S.Ct. 1895, 155 L.Ed.2d 946 (2003) (per curiam). It is also clear that Millet was not provided with either a pre- or post-deprivation hearing regarding the propriety of the immobilization. Nonetheless, Millet's claim for a denial of due process fails because he has not alleged facts sufficient to support a finding of state action within the meaning of the Fourteenth Amendment.

### I. *"State Action" v. "Under Color of State Law"*

¶ 9 Millet argues that he has adequately alleged state action because the Landlord acted under color of state law when it booted his vehicle "consciously pursuant to" the Ordinance. Implicit in Millet's argument is the notion that the under-color-of-state-law requirement of a section 1983 claim is coextensive with the state-action requirement of the Fourteenth Amendment. Millet misapprehends the relationship between actions taken under color of state law within the meaning of section 1983 and state action as defined by the Fourteenth Amendment.

■ ¶ 10 The Supreme Court has recognized that the under-color-of-state-law element of a section 1983 claim is conceptually distinct from the state-action requirement of the Fourteenth Amendment. *See Lugar,* 457 U.S. at 930, 102 S.Ct. 2744 (noting that "the state-action and under-color-of-state-law requirements are 'separate areas of inquiry'" (quoting *Flagg Bros.,* 436 U.S. at 156, 98 S.Ct. 1729)). Despite the distinction, if "a defendant's conduct satisfies the state-action requirement of the Fourteenth Amendment, the conduct also constitutes action 'under

color of state law' for [section] 1983 purposes." *Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n,* 531 U.S. 288, 295 n. 2, 121 S.Ct. 924, 148 L.Ed.2d 807 (2001) (citing *Lugar,* 457 U.S. at 935, 102 S.Ct. 2744). But, the converse is not always true. "[I]t does not follow ... that all conduct that satisfies the under-color-of-state-law requirement would satisfy the Fourteenth Amendment requirement of state action." *Lugar,* 457 U.S. at 935 n. 18, 102 S.Ct. 2744. This is because the concept of state action is narrow and falls completely within the concept of under color of state law for purposes of section 1983. *See id.* Thus, any action that can be properly labeled state action, satisfies the under-color-of-state-law requirement; but, some actions taken under color of state law may fall outside the Fourteenth Amendment state-action requirement.

■ ¶ 11 Millet's claim, that the Landlord acted pursuant to the Ordinance, is just such an instance where the under-color-of-state-law requirement of section 1983 may have been satisfied but the state-action requirement of the Fourteenth Amendment requires more. The Court has noted that "[i]f action under color of state law means nothing more than that the individual act 'with the knowledge of and pursuant to that statute,' then clearly ... that would not, in itself, satisfy the state-action requirement of the Fourteenth Amendment." *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 935 n. 18, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982) (citation omitted) (quoting *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 162 n. 23, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)). Thus, it is not enough for Millet to allege that the Landlord acted under color of, or "consciously pursuant to," the Ordinance. Instead, state action, as defined by the Fourteenth Amendment, requires two elements:

First, the "deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible." [And

s]econd, the private party must have "acted together with or ... obtained significant aid from state officials" or engaged in conduct "otherwise chargeable to the State."

*Wyatt v. Cole,* 504 U.S. 158, 162, 112 S.Ct. 1827, 118 L.Ed.2d 504 (1992) (quoting *Lugar,* 457 U.S. at 937, 102 S.Ct. 2744); *see also American Mfrs. Mut. Ins. Co. v. Sullivan,* 526 U.S. 40, 50, 119 S.Ct. 977, 143 L.Ed.2d 130 (1999); *Edmonson v. Leesville Concrete Co.,* 500 U.S. 614, 621, 111 S.Ct. 2077, 114 L.Ed.2d 660 (1991) (explaining that the "second part" of the test for state action requires the court to determine "whether a private litigant in all fairness must be deemed a government actor"). The second element is highly important for it "assure[s] that constitutional standards are invoked only when it can be said that the State is *responsible* for the specific conduct of which the plaintiff complains." *Blum v. Yaretsky,* 457 U.S. 991, 1004, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982). Here, even if we were to assume that, under the first prong, the Landlord acted pursuant to "a rule of conduct imposed by" Logan City when it booted Millet's car, Millet must still demonstrate the second prong, that the Landlord either "acted together with or ... obtained significant aid from state officials," [2] or "may fairly be said to be [a] state actor." *Wyatt,* 504 U.S. at 162, 112 S.Ct. 1827 (quotations and citations omitted).

¶ 12 "Our approach to this latter question begins by identifying 'the specific conduct of which [Millet] complains.' " *Sullivan,* 526 U.S. at 51, 119 S.Ct. 977 (quoting *Blum,* 457 U.S. at 1004, 102 S.Ct. 2777). Millet alleges that the Landlord, acting within the regulations imposed by the Ordinance,[3] deprived him of procedural due process when without prior notice or an opportunity to be heard, it affixed a boot to his automobile while parked in Bridgerland's parking lot and required the payment of fifty dollars before removing the device. Millet has not alleged any action by Logan other than the legislative act of passing the Ordinance and licensing Cache under the Ordinance and these actions cannot alone

---

**2.** Millet has not alleged that either Bridgerland or Cache enlisted the aid of state officials or courts while immobilizing his vehicle.

**3.** Millet does not allege that either Cache or Bridgerland violated the regulations imposed by the Ordinance.

support a finding of state action. *See id.* at 52, 119 S.Ct. 977 ("In cases involving extensive state regulation of a private activity, we have consistently held that 'the mere fact that a business is subject to state regulation does not by itself convert its action into that of the State for purposes of the Fourteenth Amendment.'") (quoting *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 350, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974)); *Moose Lodge No. 107 v. Irvis*, 407 U.S. 163, 175–77, 92 S.Ct. 1965, 32 L.Ed.2d 627 (1972) (holding that the state's regulation and licensing of a private club did not create a nexus sufficient to attribute private club's racial discrimination to the state in state action inquiry). Therefore, the question we address is whether a private property owner's decision to immobilize automobiles in its lot may be fairly attributed to Logan so as to subject the Landlord to the requirements of due process under the Fourteenth Amendment.[4] We determine that the Landlord cannot fairly be said to be a state actor.

## II. The Nexus Requirement

¶ 13 When a plaintiff alleges that an otherwise private party has become a state actor for purposes of the Fourteenth Amendment because it is acting pursuant to a regulatory scheme, the private party "will not be held to constitutional standards unless 'there is a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself.'" *Sullivan*, 526 U.S. at 53, 119 S.Ct. 977 (quoting *Jackson*, 419 U.S. at 350, 95 S.Ct. 449). Although we recognize that whether a sufficient nexus exists is a fact-intensive inquiry, "certain principles of general application" have emerged. *Edmonson*, 500 U.S. at 621, 111 S.Ct. 2077. In the absence of "countervailing reason[s] against attributing activity to the government," there are four circumstances where a "close nexus" is likely to exist between the state and the regulated entity, thereby satisfying the state-action requirement of the Fourteenth Amendment. *Brentwood Acad.*, 531 U.S. at 295–96, 121 S.Ct. 924.

¶ 14 First, state action may be attributed to a private actor where "the State 'has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State.'" *Sullivan*, 526 U.S. at 52, 119 S.Ct. 977 (quoting *Jackson*, 419 U.S. at 350, 95 S.Ct. 449). Second, a private party's actions may fairly be said to be the actions of the state when the state has delegated a function "traditionally [and] exclusively reserved to the State." *Jackson*, 419 U.S. at 352, 95 S.Ct. 449. Third, state action may arise where "[c]onduct that is formally 'private' ... become[s] so entwined with governmental policies or so impregnated with a governmental character as to become subject to the constitutional limitations placed upon state action." *Evans v. Newton*, 382 U.S. 296, 299, 86 S.Ct. 486, 15 L.Ed.2d 373 (1966); *see also Brentwood Acad.*, 531 U.S. at 302, 121 S.Ct. 924 ("Entwinement will support a conclusion that an ostensibly private organization ought to be charged with a public character and judged by constitutional standards...."). Finally, state action may be found where "a private actor operates as a 'willful participant in joint activity with the State or its agents,'" *Brentwood Acad.*, 531 U.S. at 296, 121 S.Ct. 924 (quoting *Lugar*, 457 U.S. at 941, 102 S.Ct. 2744), or when a private actor "is controlled by an 'agency of

---

4. In his complaint, Millet also attempts to characterize his section 1983 claim as a facial or direct challenge to the constitutionality of the Ordinance. However, characterizing the claim as a facial or direct challenge does not eliminate Millet's burden of alleging that state action "was *responsible* for the *specific conduct* of which [Millet] complains." *Blum v. Yaretsky*, 457 U.S. 991, 1004, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982) (second emphasis added); *see also American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50, 119 S.Ct. 977, 143 L.Ed.2d 130 (1999) ("Perhaps hoping to avoid the traditional application of our state-action cases, respondents attempt to char-

acterize their claim as a 'facial' or 'direct' challenge to ... the Act, in which case, the argument goes, we need not concern ourselves with the identity of the defendant or the act or decision by a private actor who is relying on the challenged law. This argument, however, ignores our repeated insistence that state action requires ... that the party charged with the deprivation must be a person who may fairly be said to be a state actor." (quotations and citations omitted)). In this instance then, to succeed on his deprivation of due process claim, Millet must allege that the State was responsible for immobilizing his vehicle and charging the fifty-dollar fee for removal.

the state,'" *id.* (quoting *Pennsylvania v. Board of Dirs. of City Trusts of Phila.*, 353 U.S. 230, 231, 77 S.Ct. 806, 1 L.Ed.2d 792 (1957) (per curiam)). Because it is not alleged that State agents or actors participated jointly or willingly with the Landlord in booting Millet's automobile and because Millet does not contend that the discrete decision to boot his vehicle was entwined with government policies or impregnated with governmental character, we discuss only the first two rationales for finding state action—state coercion or encouragement and delegation of a traditional and exclusive function.

## A. State Coercion or Encouragement

¶ 15 Millet argues that Logan coerced or encouraged Cache to boot vehicles when it passed the Ordinance regulating the practice. Millet reasons that the mere act of passing the Ordinance "clothe[d] self-help operators with 'the color of law,'" thereby creating the essential nexus for state action.[5] We disagree. As noted earlier, mere regulation of a private party's conduct is not sufficient for a finding of state action. *See Tulsa Prof'l Collection Servs., Inc. v. Pope*, 485 U.S. 478, 485, 108 S.Ct. 1340, 99 L.Ed.2d 565 (1988) ("Private use of state-sanctioned private remedies or procedures does not rise to the level of state action."). Additionally, in *American Manufacturers Mutual Insurance Co. v. Sullivan*, 526 U.S. 40, 119 S.Ct. 977, 143 L.Ed.2d 130 (1999), the Supreme Court expressly rejected the interpretation of state encouragement urged by Millet. There,

workers' compensation claimants brought a section 1983 claim asserting that private insurers' decisions to withhold insurance payments pending "utilization review" under Pennsylvania's workers' compensation statute violated their rights to procedural due process. *Id.* at 43–45, 119 S.Ct. 977. The claimants argued that the private insurers' decisions to withhold payments fulfilled the state-action requirement because "in amending the [workers' compensation] [a]ct to provide for utilization review ... [thereby] grant[ing] insurers an option they previously did not have, the State purposely 'encouraged' insurers to withhold payments for disputed medical treatment." *Id.* at 53, 119 S.Ct. 977. In holding that state action was not present where private parties were responsible for decisions made within a regulatory framework, the Supreme Court noted,

> We do not doubt that the State's decision to provide insurers the option of deferring payment ... can in some sense be seen as encouraging them to do just that. But, ... this kind of subtle encouragement is no more significant than that which inheres in the State's creation or modification of any legal remedy. *We have never held that the mere availability of a remedy for wrongful conduct ... so significantly encourages the private activity as to make the State responsible for it.*

*Id.* (emphasis added).

¶ 16 Here, like the claimants in *Sullivan*, Millet asserts that Logan "encouraged" boot-

---

5. In a related argument, Millet contends that state action is present because the Ordinance grants rights to landlords that they did not enjoy at common law. The reasoning is that where a private person consciously taps into the state's powers, as bestowed upon them by statute or ordinance, they become state actors. Millet's argument fails for two reasons. First, there is no language in the Ordinance that affirmatively grants landlords or private parking enforcement companies the power to immobilize vehicles beyond the landlord's common law rights; rather, it merely makes the exercise of the common law right to boot unlawful if certain restrictions are not met. *See* Logan, Utah, Code § 10.52.040(D) (2006). Thus, Logan did not delegate any power to regulate parking when it passed the Ordinance. Further, even if the Ordinance granted rights to landlords that they did not previously enjoy, such a grant would not support a finding of state action under the Fourteenth Amendment. *See Tulsa Prof'l Collection Servs., Inc. v. Pope,*

485 U.S. 478, 485, 108 S.Ct. 1340, 99 L.Ed.2d 565 (1988) ("Private use of state-sanctioned private remedies or procedures does not rise to the level of state action."); *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 161 n. 11, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978) ("The conduct of private actors in relying on the rights established under these liens [created by statute or legislatively enacted] to resort to self-help remedies does not permit their conduct to be ascribed to the State."). Additionally, the Court has rejected the notion that the question of state action can be reduced to a single inquiry into the origin, either common law or statutory, of a private actor's right. *See Flagg Bros.*, 436 U.S. at 161–63 & nn. 11–13, 98 S.Ct. 1729 (rejecting, expressly, the inquiry into the origin of private actor's rights because "[t]o rely upon the historical antecedents of a particular practice would result in the constitutional condemnation in one [s]tate of a remedy found perfectly permissible in another").

ing when it passed the Ordinance regulating the practice. As in *Sullivan,* we conclude that the Ordinance is merely the "kind of subtle encouragement ... which inheres in the State's creation or modification of any legal remedy" and will not, therefore, support a finding of state action based on state coercion or encouragement. *Id.; see also Pope,* 485 U.S. at 485, 108 S.Ct. 1340 ("Private use of state-sanctioned private remedies or procedures does not rise to the level of state action.").

¶ 17 Additionally, it could be just as easily said that Logan discouraged private parties from booting vehicles when it passed the Ordinance. *See Sullivan,* 526 U.S. at 53–54, 119 S.Ct. 977 (addressing the discouraging effect of regulation on the private conduct in nexus inquiry). The Ordinance does not create any new rights in private property owners, but rather significantly limits their existing rights by imposing several restrictions on the practice of booting trespassing vehicles. *Cf.* Utah Code Ann. § 41–6a–215 (2005) (providing that the traffic code "does not prevent the owner of real property used by the public for purposes of vehicular travel by permission of the owner and not as a matter of right from ... otherwise regulating the use as preferred by the owner"). Under the Ordinance, it is "unlawful for any property owner ... to boot any motor vehicle that is trespassing or infringing upon the real property rights of that property owner" unless the property owner first complies with several regulations. Logan, Utah, City Code § 10.52.040(D). Private property owners who have parking lots with four or more parking spaces must "post a conspicuous sign" on the property. *Id.* § 10.52.040(D)(1). The sign must "[b]e at least twelve inches by eighteen inches" with a "reflective background," warn that "unauthorized vehicles will be booted," and "[p]rovide sufficient information to assist vehicle owners in the prompt recovery of [their] vehicle." *Id.* Additionally, landlords who contract with private booting companies to enforce private parking restrictions must "inform their tenants of the booting practice and make available instructions on how to comply with the law." *Id.* § 10.52.040(F). Landlords are also required to provide tenants with a park-

ing permit, "instructions as to where that permit should be displayed," "a written schedule of fees," "instructions regarding visitor parking," and "a method for replacing a lost permit." *Id.* § 10.52.040(F)(1)-(4).

¶ 18 Not only does the Ordinance limit the circumstances under which private property owners may enforce parking restrictions through booting, it also makes it more difficult for parking enforcement companies to operate. The Ordinance requires "[a]ny parking enforcement company desiring to boot vehicles within Logan City" to "[o]btain a business license in the city of Logan; and register its business name ... and fee schedules." *Id.* § 10.52.040(E). The Ordinance also places a cap on the amount the company may charge, *see id.* § 10.52.040(E)(4), and requires the business to have personnel on duty at all hours to "release any vehicle ... upon payment" of the fee, *id.* § 10.52.040(D)(2)(b).

¶ 19 Where, as here, the Ordinance does not create a right to boot vehicles in private parties but merely places limits on the practice, it cannot be said that state action is present. Indeed, the content of the Ordinance leads to the conclusion that Logan has done nothing more than limit—without participation by any public official—what private property owners would tend to do, even in the absence of such legislation, which cannot support a finding of state action. *See Sullivan,* 526 U.S. at 57, 119 S.Ct. 977 (finding state action lacking where state " 'd[id] nothing more than authorize (and indeed limit)—without participation by any public official—what private [parties] would tend to do, even in the absence of such authorization' ") (quoting *Flagg Bros., Inc. v. Brooks,* 436 U.S. 149, 162 n. 12, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978)).

B. *Traditionally and Exclusively Reserved to the State*

¶ 20 Millet also argues that the nexus requirement is satisfied because Logan City delegated powers traditionally and exclusively reserved to the government. Millet identifies the powers to seize property and to make the judicial determination of whether

property may be taken without the owner's consent as powers "normally" reserved to the State. More simply, Millet reasons that state action is present because the resolution of private disputes is normally a function of the State and by passing the Ordinance, Logan has delegated this function to the Landlord, thereby fulfilling the nexus requirement and establishing state action. We disagree.

¶ 21 The Supreme Court squarely addressed the same argument in *Flagg Brothers, Inc. v. Brooks*, 436 U.S. 149, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978), and found state action lacking. There, class-action plaintiffs brought suit under section 1983 challenging, on due process grounds, a provision of New York's Uniform Commercial Code (UCC) authorizing private storage companies to sell personal property entrusted to them for storage if the storage charges were not paid. *See id.* at 151–52, 98 S.Ct. 1729. One argument advanced by the plaintiffs was that the proposed sale should be attributed to the state because in enacting the UCC, which bestowed on warehousemen the right to seize and sell personal property, New York had delegated the traditional state function of resolving private disputes. *See id.* at 157–58., 98 S.Ct. 1729 Although the Court agreed that the resolution of private disputes was a traditional function of the state, state action was nonetheless lacking because it was not an "exclusive" prerogative of the state. *See id.* at 160., 98 S.Ct. 1729 The Court explained that the relevant inquiry is not simply whether a function is normally or traditionally reserved to the state. *See Rendell–Baker v. Kohn*, 457 U.S. 830, 842, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982). Instead, "the question is whether the function performed has been traditionally the *exclusive* prerogative of the State." *Id.* (quotations

and citations omitted); *see also Flagg Bros.*, 436 U.S. at 158, 98 S.Ct. 1729 (noting that "[w]hile many functions have been traditionally performed by governments, very few have been 'exclusively reserved to the State'") (quoting *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 352, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974). In determining that the resolution of private conflicts is not an exclusive power of the state, the Court recognized that "the proposed sale by Flagg Brothers under [the UCC was] not the only means of resolving [the] purely private dispute." *Flagg Bros.*, 436 U.S. at 160, 98 S.Ct. 1729. Instead, the Court examined several private remedies including opportunities to contract for better terms and the availability of civil remedies arising in tort or under the remedial provision of the UCC. *See id.*

¶ 22 Similarly here, Millet has never alleged that the resolution of parking disputes on private property [6] is exclusively a function of the State. Instead, Millet could have sought a contract with Bridgerland to prevent the booting of his vehicle in the private lot. *See id.* (noting that the plaintiffs could have contracted for better terms as a means of solving the private dispute). Alternatively, Millet has also failed to demonstrate that the Ordinance precludes him from seeking a return of his property through tort remedies. *See id.* (weighing availability of private legal remedies against finding exclusive state function). Therefore, given "[t]his system of rights and remedies, recognizing the traditional place of private arrangements in ordering relationships in the commercial world," we conclude that it can hardly be said that Logan delegated to the Landlord "an exclusive prerogative of the sovereign." *Id.*

---

**6.** Millet attempts to characterize Bridgerland's lot as "quasi-public parking" and argues that the Ordinance delegates the State's traditional authority to enforce parking in quasi-public lots. *See* Utah Code Ann. § 41–6a–214(1) (2005) (defining a quasi-public parking lot as "a privately owned and maintained ... parking area that is generally held open for use of the public for purposes of ... parking"). However, even assuming the lot is a quasi-public parking area, we fail to see how the argument changes any of the analysis for two reasons. First, because the Ordinance does not expand a private property own-

er's rights to enforce parking but merely limits already existing rights, *see* Logan, Utah, Code § 10.52.040(D), no delegation of the State's traditional authority to enforce parking in quasi-public lots has occurred here. Second, the State's authority to enforce restrictions in quasi-public lots is not exclusive. Although peace officers *may* enforce restrictions in quasi-public lots, the traffic code "does not require a peace officer to patrol or enforce" parking restrictions, suggesting the property owner retains some traditional rights with respect to the property. Utah Code Ann. § 41–6a–214(3)(b).

¶ 23 Because this case falls squarely within the holding of *Flagg Brothers,* Millet's reliance on *Fuentes v. Shevin,* 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972), within the *Sniadach v. Family Finance Corp.,* 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969), line of cases is misplaced. *See Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 927, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982) (including *Fuentes* within *Sniadach* line of cases and distinguishing *Flagg Bros.*). In an attempt to demonstrate the presence of state action, Millet cites *Fuentes* for the proposition that the State has a "monopoly of legitimate force" that should not be abdicated to private parties. 407 U.S. at 91, 93, 92 S.Ct. 1983. Millet argues that Cache extracted the payment of the fifty dollars by force because it refused to remove the boot unless the fee was paid. Therefore, Millet contends that the Ordinance delegated the traditional state power of "legitimate force" by acquiescing in the private booting. However, Millet misapprehends the holding of *Fuentes* that dealt with state statutes providing for "the issuance of writs *ordering state agents* to seize a person's possessions, simply upon the ex parte application of any other person who claims a right to them." *Id.* at 69, 92 S.Ct. 1983 (emphasis added). Thus, the term "legitimate force," as used by the *Fuentes* Court, addressed the state's traditional power to order state agents, including sheriffs, to forcibly seize property. *See Flagg Bros.,* 436 U.S. at 160 n. 10, 98 S.Ct. 1729 (noting that in *Fuentes* the Court "concluded that state action for purposes of the Fourteenth Amendment was supplied by the participation in the seizure *on the part of the sheriff*" (emphasis added)); *Fuentes,* 407 U.S. at 93, 92 S.Ct. 1983 (finding that state power had been abdicated because under the summary procedure "[p]rivate parties ... may unilaterally invoke state power [in the form of court orders and mobilized state agents] to replevy goods from another").

¶ 24 This case presents an entirely different circumstance because neither Bridgerland nor Cache invoked any machinery of the State, either executive or judicial, to wrest personal property from the owner. Thus, the "total absence of overt official involvement plainly distinguishes this case." *Flagg Bros.,* 436 U.S. at 157, 98 S.Ct. 1729. The distinction is important because while state action may be found where private parties *with the aid of state authorities* "seize one piece of property *from a person's possession* and then agree to return it if he surrenders another," *Fuentes,* 407 U.S. at 85, 92 S.Ct. 1983 (emphasis added), no state action is present where a private party seizes another's property without the overt assistance of state officials even if accomplished by force. *Compare Lugar,* 457 U.S. at 932–33, 102 S.Ct. 2744 ("Beginning with *Sniadach* ... the Court has consistently held that constitutional requirements of due process apply to garnishment and prejudgment attachment procedures whenever *officers of the State act jointly* with a creditor in securing the property in dispute." (emphasis added)), *with Flagg Bros.,* 436 U.S. at 157, 98 S.Ct. 1729 ("While ... any person with sufficient physical power may deprive a person of his property, only a State ... may deprive him of an interest encompassed within the Fourteenth Amendment's protection." (quotations and citations omitted)). This case involves a landlord contracting with a private parking enforcement company to immobilize vehicles in a private parking lot. *Fuentes* and the entire *Sniadach* line of cases can be distinguished "on the ground that in each there was overt, official involvement in the property deprivation," which is contrary to the situation here where "there was no such action by a state officer." *Lugar,* 457 U.S. at 927, 102 S.Ct. 2744. We determine, therefore, that Logan did not delegate a traditional and exclusive State function when it passed the Ordinance.

¶ 25 Because Millet failed to allege facts that demonstrate a "close nexus" exists between Logan and the Landlord, the complaint does not state a claim under section 1983 for a deprivation of due process. The facts alleged do not support the conclusion that Logan encouraged or coerced the Landlord to immobilize Millet's vehicle or to charge him fifty dollars for its release. Nor do the allegations demonstrate that, through the Ordinance, Logan delegated a traditional and exclusive State function to the Landlord. Instead, the complaint relies solely on the

fact that the Ordinance regulates the Landlord's practice of booting. Regulation, alone, does not satisfy the Fourteenth Amendment's state-action requirement. *See American Mfrs. Mut. Ins. Co. v. Sullivan,* 526 U.S. 40, 52, 119 S.Ct. 977, 143 L.Ed.2d 130 (1999) ("In cases involving extensive state regulation of private activity, we have consistently held that '[t]he mere fact that a business is subject to state regulation does not by itself convert its action into that of the State for purposes of the Fourteenth Amendment.' " (alteration in original) (quoting *Jackson,* 419 U.S. at 350, 95 S.Ct. 449)); *Moose Lodge No. 107 v. Irvis,* 407 U.S. 163, 175–77, 92 S.Ct. 1965, 32 L.Ed.2d 627 (1972) (same).

## CONCLUSION

¶ 26 Even accepting all the facts in Millet's complaint as true, Millet has failed to demonstrate that state action was responsible for the deprivation of his property protected under the Fourteenth Amendment. Therefore, the trial court was correct in finding that Millet failed to state a claim under section 1983 for a denial of procedural due process. Mere regulation of private parties does not satisfy the state-action requirement of the Fourteenth Amendment. The actions of Bridgerland and Cache cannot be fairly attributed to the State because, although the immobilization was performed in compliance with the Ordinance, there was no overt involvement by state officials and no nexus exists between the Landlord's actions and Logan. Therefore, state action is not present, and the section 1983 claim for deprivation of due process fails as a matter of law.

¶ 27 Affirmed.

¶ 28 WE CONCUR: PAMELA T. GREENWOOD, Associate Presiding Judge and JUDITH M. BILLINGS, Judge.