*This opinion is subject to revision before final publication in the Pacific Reporter*

**2018 UT 40**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

In re DEBORAH MICHELLE KILEY

DEBORAH MICHELLE KILEY,
*Appellant and Debtor,*

*v.*

MARY M. HUNT, Trustee,
*Appellee.*

No. 20170472
Filed August 14, 2018

On Certification from the
United States Bankruptcy Court for the District of Utah
The Honorable Judge Kevin R. Anderson
Case No. 15-27838

Attorneys:

Matt Wadsworth, Salt Lake City, for appellant

Peggy Hunt, Michael F. Thomson, Megan K. Baker, Salt Lake City,
for appellee

JUSTICE PEARCE authored the opinion of the Court in which
ASSOCIATE CHIEF JUSTICE LEE, JUSTICE HIMONAS, JUSTICE PETERSEN,
and JUDGE HAGEN joined.

Having recused himself, CHIEF JUSTICE DURRANT did not participate
herein; COURT OF APPEALS JUDGE DIANA HAGEN sat.

JUSTICE PEARCE, opinion of the Court:

## INTRODUCTION

¶ 1 The bankruptcy court certified two questions of Utah law that lie at the intersection of family and bankruptcy law. Based upon a compelling certification order, we accepted the invitation to resolve those questions. After receiving briefing and conducting oral

argument, we are left with dual concerns—that the parties have not given us the briefing we need to actually answer the questions and that our opinion might ultimately be for naught. At oral argument, Kiley's counsel admitted the deficiencies in the briefing. And the bankruptcy trustee suggested that the marital property division at the heart of this case may have violated the automatic stay that accompanies a bankruptcy petition's filing. Because of the inadequate briefing and the problematic procedural posture, we revoke certification.

## BACKGROUND

¶ 2    In 2012, Deborah Kiley filed for divorce from Jarod Marrott. The district court entered temporary orders and bifurcated the proceeding; that is, the district court granted the divorce but deferred resolution of other questions, including the division of marital assets. About a year later, after Marrott had fallen behind on alimony and child support payments, Kiley filed a motion to show cause and a motion to clarify. Kiley sought to enforce the temporary orders and to recover unpaid child support and alimony.

¶ 3    The district court granted the motions and entered judgment for $121,188.22. Two months later, Kiley and Marrott participated in mediation and stipulated to a property settlement. The parties then, according to Kiley, read the stipulation into the record before the domestic relations commissioner. As part of that stipulation, and to satisfy the judgment for unpaid child support and alimony, Kiley received "all of the value in any and all of her former spouse's retirement accounts . . . ."

¶ 4    The day after mediation, Kiley petitioned for bankruptcy. About a month after that, the district court entered a supplemental decree reifying the settlement the parties had placed on the record. A couple months later, the district court entered the qualified domestic relations order (QDRO)—the document that would permit Kiley to access Marrott's retirement funds.

¶ 5    Kiley did not list the retirement plan proceeds on her initial bankruptcy disclosures. At a meeting with her creditors—a meeting that took place before the district court entered the order memorializing the stipulated property division—Kiley disclosed her interest in the retirement funds. A few months later, after the QDRO was entered, Kiley filed an amended schedule that included the retirement funds.

¶ 6    But Kiley claimed the retirement funds were exempt from the bankruptcy estate under Utah Code section 78B-5-505(1)(a)(xiv).[1] The trustee argued that the exemption was inapplicable because, among other reasons, Kiley was entitled to the value of the retirement funds, not the funds themselves. About a month later, Kiley filed another amended schedule and claimed that the retirement funds were exempt under Utah Code section 78B-5-505(1)(a)(xv).[2] The trustee asserted that this exemption was not available to Kiley either.

¶ 7    Against this backdrop, the bankruptcy court certified two questions to us:

> 1. What is the nature and scope of a party's interest in marital property as of the filing of a divorce complaint—contrasted with the nature and scope of such interest upon the entry of a divorce decree allocating such marital property? Stated differently, upon the filing for divorce, is a spouse's interest in marital property merely contingent, unliquidated, and inchoate until the entry of a divorce decree creating a vested right to receive a specific sum of money or a specific marital asset?

---

[1] This exemption provides that:

> (1)(a) An individual is entitled to exemption of the following property: . . . (xiv) except as provided in Subsection (1)(b), any money or other assets held for or payable to the individual as a participant or beneficiary from or an interest of the individual as a participant or beneficiary in a retirement plan or arrangement that is described in Section 401(a), 401(h), 401(k), 403(a), 403(b), 408, 408A, 409, 414(d), 414(e), or 457, Internal Revenue Code . . . .

UTAH CODE § 78B-5-505(1)(a).

[2] And this exemption provides that:

> (1)(a) An individual is entitled to exemption of the following property: . . . (xv) the interest of any money or other assets payable to an alternate payee under a qualified domestic relations order as those terms are defined in Section 414(p), Internal Revenue Code . . . .

UTAH CODE § 78B-5-505(1)(a).

2. Is an individual entitled to an exemption under Utah Code Ann. § 78B-5-505(1)(a)(xv) in money or other assets payable to that individual as an alternate payee under a [qualified domestic relations order] (QDRO)? Stated more simply, is the Debtor entitled under Utah law to exempt the Retirement Plan Proceeds?

¶ 8    We accepted the certified questions, ordered briefing, and held oral arguments.

## ANALYSIS

¶ 9    Certified questions can present unique challenges, as we recently noted in *Zimmerman v. University of Utah*, 2018 UT 1, 417 P.3d 78. In *Zimmerman,* we declined to answer two certified questions involving the Free Speech Clause of our constitution. *Id.* ¶¶ 1–2. We noted that "[i]f this case were before us on appeal we would have the benefit of a lower court's disposition of [these] claims. We would also be presented with the legal standards adopted by the trial court and the application of those standards to the evidence in the record." *Id.* ¶ 14.

¶ 10 We reasoned that these "obstacles alone are not insurmountable." *Id.* ¶ 16. But we concluded that the limited briefing the parties had presented us amplified the challenges inherent in answering a certified question. *Id.* Specifically, we were concerned that the parties had not provided the state constitutional analysis we needed to answer the certified questions. *Id.* ¶¶ 17–23. We noted that "[o]ur jurisdiction in answering certified questions . . . is elective" and that our discretion "necessarily encompasses the authority to decline to provide a conclusive answer after reviewing the parties' briefing." *Id.* ¶ 27. We ultimately declined to answer the Free Speech Clause questions because the briefing did not provide us what we needed to tackle a question of that importance.

¶ 11 This case offers similar challenges. The first certified question asks us to address what interest Kiley had in the marital property at various points in time. During oral argument, Kiley's counsel acknowledged: "I am apologetic because in reading both my brief and counsel's brief, for the appellee in this case, I don't think either of us really addressed [the first question] very well." And, indeed, instead of analyzing what interest Kiley had in the martial estate, Kiley spends a portion of her brief asserting that the question did not matter.

¶ 12 Kiley argues that the "matter before the Court is far broader than an academic discussion over the distinction between equitable interests in marital property as opposed to vested interests."

> The state court cites the rule that dominates current divorce law in Utah—that regardless of who the owner of record is, both parties share an interest in marital property. The nature of that interest (i.e. equitable, contingent, vested etc.) is academic. The point is that both parties share interest . . . . Here, Ms. Kiley owns ½ of the marital share of her husband's 401k—whether it was as an actual owner or equitable ownership is immaterial.

(Emphasis omitted).

¶ 13 But the bankruptcy court did not think the distinction immaterial or academic. Indeed, we believe that is why the court specifically asks us to define "[t]he nature of that interest" in the first certified question. And taking on that task, already complicated in a certified case, *see supra* ¶ 9, becomes even more challenging when we have inadequate briefing on the question from one of the parties. Though we appreciate counsel's candor about the lackluster briefing, we are left with the task of answering the bankruptcy court's question with one party declining to engage meaningfully on the central issue.

¶ 14 We have constitutional and rule-based authority to decide when to answer a certified question. *Zimmerman*, 2018 UT 1, ¶ 2 ("Our authority to answer certified questions, however, is a matter of discretion (citing UTAH CONST. art. VIII, § 3 and UTAH R. APP. P. 41.")). And, given the importance of the question and the potential to decide it with only one side of the argument before us, we believe it best to leave this question for another day.[3]

_____

[3] That the question arises in the context of funds in a retirement account further complicates the question and informs our decision to decline to answer the first certified question. The parties agree that the Employee Retirement Income Securities Act (ERISA) may have some impact on the disposition of the funds. The bankruptcy court appears to have carefully drafted the question to leave the ERISA issues out of our court. Nevertheless, both parties analyze the question with reference to ERISA. For example, Kiley argues that

(continued . . .)

¶ 15   The second certified question asks us to interpret the Utah Exemptions Act.[4] Specifically, the bankruptcy court asks us to determine whether an alternate payee under a QDRO can claim the exemption in Utah Code section 78B-5-505(1)(a)(xv). Because the Act's exemptions are applied in a variety of contexts, our interpretation has the potential to reverberate throughout the Utah Code. *See, e.g.,* *Oliver v. Mitchell*, 376 P.2d 390, 391–93 (Utah 1962) (applying exemptions statute to the garnishment of wages); *Cricket Commc'ns, Inc. v. All You Can Talk Partners, Inc.*, No. 2:11-cv-315-DB-PMW, 2011 WL 4591099, at *1–2 (D. Utah Sept. 30, 2011) (applying exemptions statute to determine what property is subject to "prejudgment writ of attachment").

¶ 16   Once again, the briefing hampers our ability to answer the question. Kiley refused, both in her brief and at oral argument, to engage with the statute's plain language. Kiley's brief focuses instead on the "cataclysmic change" that might result from a decision that the exemption does not apply to Kiley. And Kiley trots out a pretty serious parade of horribles for many debtors and divorcing spouses that she claims would occur if we were to credit the trustee's interpretation. She also claims that this interpretation would disrupt the "status quo"—which we understand to mean the manner in which the bench and bar currently understand the way the exemptions operate. But Kiley cites no authority to support that assertion.

¶ 17   Instead, Kiley's legal argument focuses on the interpretive canon that exemptions should be read in favor of the debtor. *See, e.g.,* *Russell M. Miller Co. v. Givan*, 325 P.2d 908, 909 (Utah 1958). The problem with Kiley's legal argument is that this canon comes into play if the statute is ambiguous. *See Marion Energy, Inc. v. KFJ Ranch P'ship*, 2011 UT 50, ¶ 15, 267 P.3d 863 ("When the 'meaning of [a] statute can be discerned from its language, no other interpretive

---

"ERISA qualified accounts are sacrosanct to creditors" and that Kiley's entitlement to the account is "pursuant to ERISA." Similarly the trustee argues that—whatever interest Kiley might have under state law—that interest is preempted by ERISA. So, despite the bankruptcy court's effort to present us with a question that avoided the ERISA concerns, the parties have briefed the issue in a way that presumes we will analyze ERISA's impact.

4 UTAH CODE §§ 78B-5-501 to 513.

tools are needed.'" (alteration in original) (citation omitted)). And despite repeated questions during oral argument aimed at permitting, and indeed imploring, Kiley to identify an ambiguity, Kiley refused to play ball. Instead, Kiley's counsel responded with a discussion of how practitioners interpreted the exemptions and the dire consequences flowing from a reading that would deny his client, and those like her, from claiming the exemption. In other words, because Kiley refused to engage with the statute's language, we have only one reading of the statute in front of us. And we hesitate to opine on a matter of Utah law that could have serious impacts beyond this case with only one side of the issue analyzed.

¶ 18  One final consideration motivates us to decline to answer the certified questions. There appears to be a question regarding whether the automatic stay that accompanies a bankruptcy filing has the potential to void the property settlement at issue in this case.[5]

¶ 19  We asked the bankruptcy trustee about the automatic stay's potential impact. The response did not assuage our concerns that our decision could be mooted. At oral argument, the trustee's counsel stated that:

> Section 362(b)(2) of the Bankruptcy Code does . . . state that the automatic stay does not apply to certain

---

[5] When a bankruptcy petition is filed, the petition:

(a) . . . operates as a stay, applicable to all entitles, of—

. . .

    (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate . . . .

(b) The filing of a petition . . . does not operate as a stay— . . .

    (2) under subsection (a)—

        (A) of the commencement or continuation of a civil action or proceeding— . . .

            (ii) for the establishment or modification of an order for domestic support obligations; . . .

            (iv) for the dissolution of marriage, except to the extent that such proceeding seeks to determine the division of property that is property of the estate . . . .

11 U.S.C. § 362.

divorce-related proceedings. Property division is not one of them. . . . [The automatic stay] was not lifted. We haven't gone to those issues, quite frankly, because, from our perspective, . . . if we go down the road of "was the automatic stay violated?" and "is that order void?", . . . from our perspective, we don't have to go there because I think we win on these grounds.

¶ 20 Trustee's counsel did assert that, "I think the same argument with respect to the exemption will apply regardless of whether those orders violated the automatic stay." But the potential for the bankruptcy trustee to effectively moot our decision, coupled with the concerns we have about the briefing in this matter, convince us that the best course of action is to decline to answer these certified questions.

**CONCLUSION**

¶ 21 The Utah Constitution provides us with jurisdiction to answer questions of state law certified by the federal courts. We have discretion to answer those questions or not. Although we appreciate the work that the bankruptcy court invested in the certification order, we decline to answer the questions because the issues have not been adequately briefed and because of the potential impact of the automatic stay on the property settlement at the heart of this case. We revoke certification.

———————