2020 UT App 14

## THE UTAH COURT OF APPEALS

REGGIE ANN PECK,
Appellee,
*v.*
KEVIN SCOTT PECK,
Appellant.

Opinion
No. 20180732-CA
Filed January 24, 2020

First District Court, Logan Department
The Honorable Thomas Willmore
No. 094100623

David Pedrazas, Attorney for Appellant

Marlin J. Grant, Attorney for Appellee

JUDGE MICHELE M. CHRISTIANSEN FORSTER authored this Opinion,
in which JUDGE GREGORY K. ORME concurred. JUDGE JILL M.
POHLMAN dissented, with opinion.

CHRISTIANSEN FORSTER, Judge:

¶1     Kevin Scott Peck appeals the district court's denial of several motions aimed at correcting an alleged clerical error in a qualified domestic relations order (QDRO) entered by the court. We affirm the district court's determination that the QDRO reflected the parties' intent but reverse the court's dismissal of Kevin's[1] rule 60(b) motion on timeliness grounds and remand for further proceedings.

_____

1. "As is our practice in cases where both parties share a last name, we refer to the parties by their first name with no

(continued…)

BACKGROUND

¶2      Kevin married Reggie Ann Peck on June 15, 2001, and the parties divorced on July 15, 2003. Their decree of divorce awarded Kevin all interest in his retirement pension.

¶3      After a short separation, the parties began cohabiting and then remarried on October 22, 2004. The parties divorced a second time on November 19, 2010. The parties' second decree of divorce, which was based on the parties' stipulation, referenced the prior marriage, stating that the parties "had previously been married to each other on June 15, 2001, then divorced." With respect to retirement, the second decree provided, "Retirement will be divided according to the formula set forth in the case of *Woodward v. Woodward*." It also provided that the division would be accomplished by the entry of a QDRO.

¶4      In early 2016, Reggie submitted a QDRO for approval, which stated, "The Member and the Alternate Payee were married on June 15, 2001. The Member and the Alternate Payee were divorced on November 19, 2010." The QDRO further stated that "[t]he Alternate Payee is awarded 50% of the Member's benefits accrued during the marriage." Kevin did not object to the QDRO, and the court signed it on May 12, 2016.[2]

---

(…continued)
disrespect intended by the apparent informality." *Smith v. Smith*, 2017 UT App 40, ¶ 2 n.1, 392 P.3d 985.

2. Actually, three versions of the QDRO were submitted to the court and signed—one on February 4, 2016, one on March 18, 2016, and one on May 12, 2016. All three versions contained the June 15, 2001 marriage date and purported to divide Kevin's

(continued…)

¶5     On October 24, 2017, seventeen months after the final QDRO was signed, Kevin filed a motion for a nunc pro tunc order to correct the date of the parties' marriage in the QDRO from June 15, 2001, to October 22, 2004, asserting that the second decree divided only retirement accrued during the second marriage. Reggie objected, asserting that the date used in the QDRO reflected the parties' intent to "use[] the [first] marriage to equitably divide the retirement" "[b]ecause there was not that much of a gap between the [first] marriage and the second remarriage."

¶6     The court held a hearing on the matter on January 18, 2018. At the hearing, Reggie submitted a letter sent to her counsel from prior counsel that included a QDRO drafted in 2010 that had been approved as to form by Kevin's prior attorney. Like the QDRO ultimately filed with the court, this QDRO included a marriage date of June 15, 2001. Reggie argued that the earlier QDRO demonstrated that the parties had "always" intended to "put the first marriage date as the date the QDRO would be divided and through the divorce period." Her attorney explained that he "didn't think [the Decree] needed [the date] because [Kevin's prior attorney] signed off on the QDRO where it said that." The district court found, based on the QDRO signed by Kevin's attorney in 2010, "that there is enough evidence to show that the parties intended to use the first marriage date to split the retirement." It therefore denied Kevin's motion to enter a nunc pro tunc order amending the QDRO.

---

(…continued)

defined benefit plan. As any differences between the orders are not relevant to the issue presented on appeal, we refer to the most recent version of the order for simplicity.

¶7     Kevin next filed a motion pursuant to rules 60(a) and 60(b) of the Utah Rules of Civil Procedure, requesting that the court either correct the date as a clerical error or set aside the QDRO using "the residuary clause of rule 60(b)" due to gross attorney negligence. (Quotation simplified.) The court denied this motion as well. First, the court rejected Kevin's rule 60(a) argument because it found, "based upon the previous findings and ruling by the Court at the January 18, 2018, hearing," "that there was no clerical mistake." Second, the court rejected Kevin's rule 60(b) argument because it determined that Kevin's arguments on this point were "based on mistake or excusable neglect," matters that must be raised, according to rule 60, "not more than 90 days after entry of the judgment or order." Utah R. Civ. P. 60(c). The court found that Kevin was attempting to "circumvent the three month period" by framing his arguments under the rule 60(b)(6) residuary clause when his allegations as to the competence of his prior attorneys actually concerned mistake and excusable neglect. The court therefore found Kevin's rule 60(b) motion to be untimely and denied it on that basis. Kevin now appeals.

ISSUES AND STANDARDS OF REVIEW

¶8     Kevin asserts that the district court erred in denying his motion for a nunc pro tunc order, his rule 60(a) motion to correct a clerical mistake, and his rule 60(b) motion to set aside the QDRO. Because both the motion for a nunc pro tunc order and the rule 60(a) motion turned on the existence of a clerical error, we address Kevin's arguments with respect to both motions as a single issue. In doing so, we accept the court's factual findings unless they are shown to be clearly erroneous, *Stonehocker v. Stonehocker*, 2008 UT App 11, ¶¶ 9, 44, 176 P.3d 476, but review its ultimate determination regarding the existence of a clerical error for correctness, *see State v. Rodrigues*, 2009 UT 62, ¶ 11, 218 P.3d 610; *Behrman v. Behrman*, 2006 UT App 257, ¶ 8, 139 P.3d

307. With respect to the court's denial of Kevin's rule 60(b) motion, the court "is afforded broad discretion . . . , and its determination will not be disturbed absent an abuse of discretion." *Birch v. Birch*, 771 P.2d 1114, 1117 (Utah Ct. App. 1989).

ANALYSIS

I. Clerical Error

¶9     "A clerical error is one made in recording a judgment that results in the entry of a judgment which does not conform to the actual intention of the court." *State v. Rodrigues*, 2009 UT 62, ¶ 14, 218 P.3d 610 (quotation simplified). Rule 60(a) of the Utah Rules of Civil Procedure permits a court to "correct a clerical mistake . . . whenever one is found in a judgment, order, or other part of the record." Utah R. Civ. P. 60(a). "On the other hand, a judicial error is one made in rendering the judgment and results in a substantively incorrect judgment." *Rodrigues*, 2009 UT 62, ¶ 14 (quotation simplified). Judicial errors are not subject to correction under rule 60(a) but must be challenged either in the context of appeal or, in limited cases, through a rule 60(b) motion to set aside. *See Fisher v. Bybee*, 2004 UT 92, ¶¶ 10–11, 104 P.3d 1198 (explaining the limitations of rule 60(b) in challenging alleged legal errors); *Thomas A. Paulsen Co. v. Industrial Comm'n*, 770 P.2d 125, 130 (Utah 1989) (explaining that a district court may generally correct only clerical errors, not judicial errors). "The distinction between a judicial error and a clerical error does not depend upon who made it. Rather, it depends on whether it was made in rendering the judgment or in *recording* the judgment as rendered." *Lindsay v. Atkin*, 680 P.2d 401, 402 (Utah 1984) (quotation simplified).

¶10     Kevin maintains that the use of the first marriage date, rather than the second marriage date, in the QDRO is a clerical

error because it does not reflect the intention of the second decree. Reggie, on the other hand, asserts that this cannot be considered a clerical error because the court found that the parties intended to use that date in the QDRO.[3]

---

3. Based on the plain language of the second divorce decree, which was based on the parties' stipulation, the use of the first marriage date in the QDRO does seem to be an error. A QDRO must conform to the terms of the decree that it effectuates. Indeed, a QDRO is merely a mechanism by which the retirement provisions of a divorce decree are enforced. *See In re Kiley*, 2018 UT 40, ¶ 4, 427 P.3d 1165 (defining a QDRO as "the document that would permit [an alternate payee] to access [the plan participant's] retirement funds"); *Bailey v. Bailey*, 745 P.2d 830, 832 (Utah 1987) (explaining that a QDRO "furnishes instructions to the trustee of a retirement plan and specifies how distributions should be made"); *Potts v. Potts*, 2018 UT App 169, ¶ 1 n.2, 436 P.3d 263 ("A [QDRO] instructs the trustee of a retirement plan and specifies how distributions should be made, to whom, and when." (quotation simplified)); *see also Johnson v. Johnson*, 2014 UT 21, ¶ 17 n.28, 330 P.3d 704 (rejecting the assertion that a QDRO must be filed for a beneficiary "to enforce her right to payments," explaining that the party's entitlement to a share of the benefits is established by the decree itself, not subsequent documents filed to enforce the payment by a plan administrator). And there are no findings or other explanation in the second decree indicating that the parties or the court intended for the retirement to be divided as of the date of the first marriage. The only mention of the previous marriage in the decree is the bare factual statement, in an early paragraph outlining the historical background of the parties' marriage, that the parties "had previously been married to each other on June 15, 2001, then divorced." The decree does not assign any

(continued…)

¶11 "[O]ur clerical error analysis generally focuses on (1) whether the order or judgment that was rendered reflects what was done or intended, (2) whether the error is the result of judicial reasoning and decision making, and (3) whether the error is clear from the record." *Rodrigues*, 2009 UT 62, ¶ 14. Here, the court found that the parties intended to use the date of the first marriage in the QDRO based on Kevin's prior attorney's approval of the QDRO as to form. Kevin does not challenge this finding on appeal but instead asserts that any such intention is irrelevant because the QDRO must reflect the terms of the second decree, which contains no findings or conclusions indicating the parties' or the court's intent to divide the retirement based on the first marriage date. *See supra* note 3. But the fact that the plain language of the divorce decree suggests that it may have been legal error to use the first marriage date in the QDRO does not mean that the parties and the court did not intend to use that date. And Kevin has not challenged the court's finding that the parties intended—erroneously or otherwise—to use the first marriage date. The fact that the parties stipulated to and the court approved a QDRO that contained a legal error

---

(…continued)

relevance to this factual statement, let alone link it specifically to the retirement division. The retirement provision states only that "[r]etirement will be divided according to the formula set forth in the case of *Woodward v. Woodward*," 656 P.2d 431 (Utah 1982), and in fact, the decree's alimony provision explicitly states, "This is a 5 year marriage . . . ." Further, we have previously required courts attempting to divide assets from a previous marriage in a second divorce to make specific findings supporting either a modification of the first divorce or a division of premarital assets based on "the existence of exceptional circumstances." *Kelley v. Kelley*, 2000 UT App 236, ¶¶ 22–24, 9 P.3d 171. No such findings were contained in the decree here.

ultimately demonstrates an error of judicial decision making, not a mistake in memorializing the QDRO. But Kevin did not object to the QDRO when it was proposed and therefore lost the opportunity to challenge this legal error directly. While this is unfortunate, he cannot now remedy his failure to timely object by reframing the error as clerical. Because we agree with the district court that Kevin cannot establish that the marriage date used in the QDRO was a clerical error, we affirm the district court's refusal to enter a nunc pro tunc order reforming the QDRO.

## II. Rule 60(b)

¶12 Kevin next asserts that the district court erred in denying his motion to set aside the QDRO pursuant to the residuary clause of rule 60(b) of the Utah Rules of Civil Procedure on the ground that his prior attorneys were grossly negligent in failing to notify him of hearings and orders, failing to appear at hearings, and failing to object to the QDRO in a timely manner. The district court determined that these arguments could not properly be raised under the residuary clause of rule 60(b) because Kevin's prior attorneys' actions "may constitute a mistake or excusable neglect" and therefore would be more properly addressed pursuant to rule 60(b)(1). Because a motion under rule 60(b)(1) must be brought within ninety days, the court dismissed Kevin's motion as untimely.

¶13 "Rule 60(b)(6) [the residuary clause] is the 'catch-all' provision of rule 60(b)." *Menzies v. Galetka*, 2006 UT 81, ¶ 71, 150 P.3d 480. Therefore, "it may not be relied upon if the asserted grounds for relief fall within any other subsection of rule 60(b)." *Id.* Rule 60(b)(1) permits a court to set aside a judgment for "mistake, inadvertence, surprise, or excusable neglect." Utah R. Civ. P. 60(b)(1). "In cases where subsection (b)(1) applies, a movant may not attempt to circumvent the three-month filing

period by relying on another subsection." *Menzies*, 2006 UT 81, ¶ 65.

¶14    Gross attorney negligence that is "too egregious and exceptional to be encompassed by rule 60(b)(1)" may be assessed under the residuary clause. *Id.* ¶ 74. Here, the district court did not consider whether the actions of Kevin's attorneys constituted gross negligence. Instead, it determined that Kevin's argument did not fall within the residuary clause because it believed the argument could be considered under rule 60(b)(1). *See id.* But our supreme court rejected this approach in *Menzies*: "The rule is that 60(b)(6) cannot be relied upon if the *grounds* for relief fall within another subsection, not that 60(b)(6) does not apply if the court has . . . *considered* another ground." *Id.* The district court in this case did not find grounds under rule 60(b)(1). Instead, it found only that "*if* [Kevin's] attorney failed to give him notice or object that *may* constitute a mistake or excusable neglect" and that "the issues raised . . . are *possibly* mistake or excusable neglect."[4] (Emphases added.) Without a finding that grounds for relief existed under rule 60(b)(1), the district court should not

---

4. In its conclusion, the court states, "Rule 60(b)(6) cannot be used to circumvent the three month period when Respondent is laying blame upon his attorney, which allegations the Court *has found* amounts to mistake or excusable neglect." (Emphasis added.) However, the court's actual findings are equivocal on this point, as noted above, and the court did not make any findings regarding the efficacy of the attorneys' actions or inaction, how the prior attorneys' representation affected Kevin, or whether any mistake or neglect on the part of the prior attorneys was excusable. Thus, we cannot construe this final summation in the district court's order as a finding that the attorneys' actions actually established grounds of mistake or excusable neglect.

have refused to consider Kevin's gross attorney negligence argument under the residuary clause. We therefore must reverse the district court's ruling on Kevin's rule 60(b) motion and remand for further proceedings.[5]

¶15 On remand, the court should determine whether Kevin's arguments establish mistake, excusable neglect, gross attorney negligence, or none of these. If the court does find that Kevin's prior attorneys committed gross negligence, then the motion may be rejected as untimely only if the court determines that it was not "filed within a reasonable time." Utah R. Civ. P. 60(c). *See generally Crane-Jenkins v. Mikarose, LLC*, 2015 UT App 270, ¶ 12, 374 P.3d 1024 (discussing the standard for determining whether a rule 60(b) motion has been brought within a reasonable time).

---

5. The dissent disagrees with our decision to address this argument, asserting that Kevin has not adequately challenged the court's findings on appeal. While Kevin has certainly not developed his rule 60(b) argument as thoroughly as we would like to see, he is clear in asserting that *Menzies* places gross attorney negligence within the residuary clause of rule 60(b) and that the district court erred in declining to consider his arguments under the residuary clause. As the dissent points out, this is the same argument he made to the district court, but that is not inherently a basis to reject the argument or to consider it inadequate. On appeal, Kevin asks us to correct what he perceives as the district court's error in rejecting his argument in the first place. While our analysis is ultimately a bit more nuanced, in that we acknowledge that analysis under the residuary clause may be precluded by a finding that the facts actually fall under another provision, Kevin's assertion that gross attorney negligence falls under the residuary clause is well-taken.

CONCLUSION

¶16    Because the marriage date listed in the QDRO was a legal error, rather than a clerical error, the district court did not err in declining to enter a nunc pro tunc order or in denying Kevin's rule 60(a) motion. However, we reverse and remand the court's ruling on Kevin's rule 60(b) motion because the court's findings were insufficient to support its determination that the motion was untimely.

————————

POHLMAN, Judge (concurring and dissenting):

¶17    I would affirm. While I join the majority's affirmance of the district court's refusal to enter a nunc pro tunc order, *supra* ¶ 11, I would not reach the merits of the district court's rule 60(b) decision, *supra* ¶¶ 12–15, or reverse on that basis.

¶18    The majority concludes that the district court erred in its rule 60(b) assessment because it failed to make sufficient findings to support its apparent determination that the motion fell under subsection (b)(1) rather than the catchall subsection, (b)(6), and was therefore untimely. *Supra* ¶¶ 12–15. The majority faults the court for failing in its rule 60(b) decision to find that grounds under subsection (b)(1) had "actually [been] established." *Supra* ¶ 14 & n.4. But on appeal, Kevin has mounted no challenge to the sufficiency of the district court's rule 60(b) findings, and he makes no argument that its decision should be reversed because it failed to find that rule 60(b)(1) grounds had been established. Thus, in my view, the majority's conclusion on the rule 60(b) issue seems to stray into advocacy, essentially making for Kevin an argument that he did not make for himself and then reversing the matter on that ground.

¶19     As our supreme court has explained, "our appellate system has developed along the adversarial model, which is founded on the premise that parties are in the best position to select and argue the issues most advantageous to themselves, while allowing an impartial tribunal to determine the merits of those arguments." *State v. Johnson*, 2017 UT 76, ¶ 8, 416 P.3d 443 (cleaned up); *see also id.* ¶ 74 (Lee, J., concurring) ("Ours is an adversary system. Within it judges are sworn to follow the law in an evenhanded, objective manner. We sidestep that system when we take on a role of advocacy."). In such a system, values of fairness and judicial economy dictate that our appellate courts "will not independently root around in the record to try to figure out whether" the district court "got it right." *Living Rivers v. Executive Dir. of the Utah Dep't of Envtl. Quality*, 2017 UT 64, ¶ 51, 417 P.3d 57; *see also Johnson*, 2017 UT 76, ¶ 8 (stating that our adversarial system "preserves judicial economy and fairness between the parties").

¶20     Instead, in our system, appellants carry the burden to persuade a reviewing court through reasoned, supported argument that the district court committed harmful, reversible error—a burden that necessarily requires the appellant to address the reasoning and basis of the district court's ruling and to explain why that court got it wrong. *See Living Rivers*, 2017 UT 64, ¶¶ 41–43, 50–51; *Duchesne Land, LC v. Division of Consumer Prot.*, 2011 UT App 153, ¶ 8, 257 P.3d 441 ("Because [the appellants] have not addressed the actual basis for the district court's ruling, they have failed to persuade us that the district court's ruling constituted error . . . ."); *see also* Utah R. App. P. 24(a)(8). If an appellant fails to carry this burden, our appellate courts have repeatedly held that the desire to correct what may amount to legal error must give way to the well-established "institutional constraints" and values underlying our adversarial system. *Goldenwest Fed. Credit Union v. Kenworthy*, 2017 UT App 191, ¶ 16, 406 P.3d 253 (affirming the district court's grant of

summary judgment where the appellant failed to demonstrate error in the district court's decision, observing that principles of "preservation and adequate briefing must prevail over legal correctness"); *see also Living Rivers*, 2017 UT 64, ¶¶ 41–43, 50–51 (affirming the decision below where the appellant "utterly" failed to point out any error in that decision or explain why the decision was wrong, instead merely restating the same legal position that was rejected below); *Allen v. Friel*, 2008 UT 56, ¶¶ 7, 14, 194 P.3d 903 (setting forth an appellant's burden on appeal, which requires addressing the district court's reasoning and demonstrating the error in that reasoning and the court's ultimate ruling, and dismissing the appellant's appeal where he failed to address the district court's actual holdings).

¶21 These same principles, in my view, should dictate affirmance of the district court's rule 60(b) ruling here. Kevin merely restates to us the same reasons why he should be entitled to relief under rule 60(b) that were rejected by the district court's ruling. *See Living Rivers*, 2017 UT 64, ¶¶ 41–43, 50–51. He makes no attempt to explain why the basis for the district court's decision is wrong, and he makes no argument that its findings fail to sufficiently support its ultimate conclusion. *See id.* Indeed, Kevin's opening brief is virtually identical to the motion to set aside that the district court rejected.

¶22 The majority's conclusion on the rule 60(b) issue may be correct as a matter of law. But, in my view, Kevin has not met his burden to persuade us to even reach the merits of the issue. In such circumstances, as we have held before, "our institutional constraints [ought to] prevent us from reversing on the basis of a winning argument that [Kevin] did not make." *See Goldenwest Fed. Credit Union*, 2017 UT App 191, ¶ 16. On this basis, I would affirm the district court's rule 60(b) decision.

———————