**2024 UT App 19**

## THE UTAH COURT OF APPEALS

DANIEL R. COTTAM,
*Appellant,*

*v.*

IHC HEALTH SERVICES INC., SHAWN MORROW, AND MARK J. OTT,
*Appellees.*

Opinion
No. 20210606-CA
Filed February 15, 2024

Third District Court, West Jordan Department
The Honorable Matthew Bates
No. 200906311

Dennis R. James, Jonathan L. Hawkins, and
Janet I. Jenson, Attorneys for Appellant

Alexander Dushku, Justin W. Starr, James T. Burton,
and Michael Eixenberger, Attorneys for Appellees

JUDGE JOHN D. LUTHY authored this Opinion, in which
JUDGES GREGORY K. ORME and
MICHELE M. CHRISTIANSEN FORSTER concurred.

LUTHY, Judge:

¶1    After Daniel R. Cottam, M.D., was denied reappointment to the medical staff of LDS Hospital (the Hospital), he sued the Hospital's corporate owner, IHC Health Services Inc.; one of the Hospital's administrators; and a voting member of the Hospital's board (collectively, the Hospital Defendants). The Hospital Defendants filed a motion to dismiss Cottam's lawsuit, arguing that his claims were barred by provisions in the Hospital's bylaws (the Bylaws), which form a contract between the Hospital and its doctors. *See Don Houston, M.D., Inc. v. Intermountain Health Care, Inc.*, 933 P.2d 403, 407 (Utah Ct. App. 1997) (stating that "hospital bylaws are a contract between the hospital and the physician"

(cleaned up)). Cottam does not contest that the terms of the Bylaws grant wholesale immunity from suit to the Hospital Defendants. The district court granted the Hospital Defendants' motion, ruling that Cottam had provided no substantive argument for why the Bylaws' immunity provisions should not be enforced according to their terms. In his principal brief on appeal, Cottam again provides no substantive analysis or support to counter the district court's application of the immunity provisions in the Bylaws. We therefore conclude that Cottam has inadequately briefed this issue and, thus, failed to carry his burden of persuasion on appeal. Accordingly, we affirm.

## BACKGROUND

¶2     Cottam is a licensed Utah physician and surgeon. He was granted medical staff privileges at the Hospital in January 2008. He was recredentialed without issue in 2009, 2010, and 2012. In 2014, he was recredentialed with stipulations. Then in 2015, the Hospital's medical director informed Cottam that the Medical Executive Committee (the MEC) wanted to meet with him. Cottam eventually met with a group of physicians who were officers on the Hospital's medical staff, and they presented Cottam with concerns they had regarding his performance at the Hospital. Following that meeting, Cottam was reappointed "with a one-year focused professional practice evaluation." The same condition was placed on his reappointment in 2016. Then in 2017, the Hospital reappointed Cottam to its medical staff without conditions. In May 2018, however, the MEC voted to terminate his privileges and deny him reappointment to the Hospital's medical staff.

¶3     Cottam appealed the MEC's decision to a hearing committee (the Hearing Committee). The Hearing Committee held a hearing that included "15 hours of testimony from nine (9) witnesses, the presentation of more than ninety (90) exhibits and lengthy argument by both the [H]ospital's attorney and Dr.

Cottam's attorneys." The Hearing Committee thereafter issued a decision upholding the MEC's denial of Cottam's reappointment to the Hospital's medical staff.

¶4     The Hearing Committee's decision was reviewed by the Board of Trustees of Salt Lake Valley Hospitals of Intermountain Healthcare, and that body confirmed the Hearing Committee's decision. The Hospital Defendants subsequently submitted a report of the denial of Cottam's staff privileges to the National Practitioner Data Bank.

¶5     Cottam then sued the Hospital Defendants, asserting, among other things, that "[t]he filing of this untrue, negative and disparaging report about Dr. Cottam with the National Practitioner Data Bank . . . has and will continue to irreparably and permanently damage Dr. Cottam's career, his livelihood, and his ability to practice medicine anywhere in the nation." In his suit, Cottam alleged claims for breach of contract, tortious interference with present and prospective business relationships, defamation per se, breach of the implied covenant of good faith and fair dealing, and unconstitutional denial of property rights without due process. He specifically alleged that the Hospital Defendants "are bound by [the Bylaws]" and that, in the process of denying his reappointment and in reviewing the MEC's decision, the Hospital Defendants "violated many of the Bylaws' requirements." He then detailed the alleged breaches. As remedies, Cottam sought compensatory, incidental, consequential, and punitive damages as well as a declaration that denial of his reappointment was void.

¶6     The Hospital Defendants responded by filing a motion to dismiss, arguing that they were contractually immune from suit under the following provision of the Bylaws:

> Each member of the Medical Staff and each person with clinical privileges and each person applying for the Medical Staff or applying for clinical

> privileges in the Hospital or requesting reappointment or renewal of membership or privileges . . . agrees to . . . release from liability of every kind and from any other judicial relief each person or entity that provides information to the Hospital and Medical Staff in connection with any credentials check, background check, admission or reappointment process, quality or other peer review, or other Hospital or Medical Staff function; [and] [t]o release from liability of every kind and from any other judicial relief, Intermountain Healthcare, the Hospital[], the Central Region Board, the Medical Staff, and each person or entity that participates in good faith in or supports or administers any Medical Staff credentials verification or review, appointment, reappointment, peer review, quality improvement, discipline, or corrective action.

The Hospital Defendants contended that the Bylaws constitute a binding contract between the Hospital and its medical staff and that Cottam accepted the terms of the Bylaws by voluntarily seeking appointment by the Hospital. Accordingly, they asserted, the Bylaws' grant of "immunity from all claims for relief against [the Hospital Defendants] for any actions related to the peer review process" and release "from all liability related to . . . reappointment and the resulting peer review process" barred Cottam "from seeking any legal redress against [the Hospital Defendants]," meaning that "his claims must be dismissed."

¶7 Responding to Cottam's allegations that the Hospital Defendants had breached the Bylaws, the Hospital Defendants argued that "the Bylaws make clear that technical breaches do not constitute a breach of the Bylaws," which instead require only "substantial, good faith compliance" with their terms. The Hospital Defendants asserted, quoting Utah case law, that the

Bylaws' "substantial compliance provision aligns with Utah law, 'which grants deference to hospital officials' professional judgment' and 'require[s] that a hospital only "substantially compl[ies]" with its bylaws.'" (Alterations in original.) (Quoting *Don Houston, M.D., Inc. v. Intermountain Health Care, Inc.*, 933 P.2d 403, 408 (Utah Ct. App. 1997).) The Hospital Defendants then argued that their alleged breaches of the Bylaws, "even if taken as true for purposes of the [m]otion," did not constitute a "material breach" "that would negate the immunity and releases conferred by Dr. Cottam."

¶8 Cottam responded by again asserting that the Hospital Defendants had breached the Bylaws and by calling the alleged breaches "egregious[]." He also contended that immunity has limitations. In that regard, he first made an assertion regarding the federal Health Care Quality Improvement Act (HCQIA), *see* 42 U.S.C. §§ 11101–11152, contending:

> [T]he very reason that [the Hospital] has [the Bylaws] and a credentialing process is that, by complying with HCQIA, it obtains some degree of immunity. If any hospital fails to comply with HCQIA or breaches HCQIA, it loses its immunity.
>
> HCQIA expressly provides that a physician who is being disciplined by a hospital through its credentialing process has the right to sue the hospital. Indeed, Intermountain Healthcare itself established the law on this point when it argued that a physician had no right to sue it and lost in the Tenth Circuit.

(Citing *Decker v. IHC Hosps., Inc.*, 982 F.2d 433 (10th Cir. 1992).) And he concluded:

> We ask the [c]ourt, in the name of fairness, to declare what we all know to be true: There are limits to

immunity—the immunity in the [B]ylaws, the immunity in state statutes, the immunity in procedural rules, the immunity in federal statutes—all have limits and those limits are called due process rights under the 14th Amendment of the U.S. Constitution. Those limits are called the implied covenant of good faith and fair dealing. Those limits are called, even in [the Hospital Defendants'] own documents, substantial compliance with principles of fairness.

¶9 The district court heard oral argument on the Hospital Defendants' motion to dismiss, during which Cottam also asserted that "any contract that is breached by one party is no longer enforceable by that party" and that a breach by one party "releases the other party from any obligations on their part." The Hospital Defendants acknowledged that under Utah law "for a breach of contract claim, in order to get out of the contract, which will void complying with your obligations under the contract, there has to be a material breach of the contract by the party that is seeking enforcement." On this basis, the Hospital Defendants appeared to suggest that if Cottam pled a material breach of the Bylaws, he may "be able to get around" the Bylaws' immunity provisions.

¶10 The court subsequently issued a written decision and order, in which it indicated that Cottam had not adequately responded to the Hospital Defendants' assertion of contractual immunity and release from liability. Specifically regarding the impact of HCQIA on contractual immunity, the court explained:

HCQIA provides immunity from damages when a hospital engages in a professional review action that complies with the HCQIA standards. HCQIA is essentially a shield that a hospital can raise in defense to a lawsuit by a physician who has been

subject to adverse action by the hospital. But [Cottam] cannot use that shield as a sword. . . .

[The Hospital Defendants] do not assert HCQIA immunity in their motion to dismiss. Instead, they are asserting immunity under the [B]ylaws and under state law contract principles.

(Citation omitted.) Thus, the court determined, HCQIA was "irrelevant" to the issue of contractual immunity and release of liability. Then the court explained:

Because [Cottam] has failed to offer any substantive rebuttal to [the Hospital Defendants'] assertion of contractual immunity, the [c]ourt grants the motion to dismiss. While [Cottam] asserted in his Complaint and Amended Complaint that [the Hospital Defendants] breached the [B]ylaws, potentially relieving him of his contractual obligation to release them from liability, he has failed to cite any relevant case law regarding the effect of a hospital's breach of its bylaws on its contractual immunity and he has failed to analyze or apply the factual assertions in his Amended Complaint to that case law.

The [c]ourt is not a repository into which parties may dump the burden of argument and research. Nor will the [c]ourt assume an adversarial position to [the Hospital Defendants] and make [Cottam's] arguments for him. [Cottam's] obligation in responding to a motion to dismiss is to address and analyze the arguments that the moving party raises. It is not enough for [Cottam] to assert breaches of the [B]ylaws and then argue a loss of immunity under an irrelevant federal law.

(Citation omitted.)

¶11 As an alternative ground for granting the Hospital Defendants' motion to dismiss, the court also "agree[d] with [the Hospital Defendants] on the merits," ruling that while the Hospital Defendants "may not have adhered to every technical provision of the [B]ylaws, they substantially complied with them."

¶12 Cottam now appeals, arguing that the district court erred in granting the Hospital Defendants' motion to dismiss.

ISSUE AND STANDARD OF REVIEW

¶13 "We review the grant of a motion to dismiss for correctness, granting no deference to the decision of the district court." *Nielsen v. LeBaron*, 2023 UT App 29, ¶ 11, 527 P.3d 1133 (cleaned up), *cert. denied*, 534 P.3d 751 (Utah 2023). "A motion to dismiss should be granted only if, assuming the truth of the allegations in the complaint and drawing all reasonable inferences therefrom in the light most favorable to the plaintiff, it is clear that the plaintiff is not entitled to relief." *Id.* (cleaned up).

ANALYSIS

¶14 Cottam asserts that the district court improperly granted the Hospital Defendants' motion to dismiss. He advances several arguments in his opening brief supporting this assertion, but notably missing from them is any explanation or analysis as to why the district court erred by concluding that the Hospital Defendants are entitled to contractual immunity. Instead, Cottam merely repeats, virtually verbatim, the two blocks of text quoted above from his district court memorandum in opposition to the motion to dismiss, asserting that HCQIA gives him the right to sue the Hospital Defendants and asking that we set aside the

Hospital Defendants' contractual immunity "in the name of fairness."

¶15    Rule 24 of the Utah Rules of Appellate Procedure requires that, in a principal brief, a party "must explain, with reasoned analysis supported by citations to legal authority and the record, why the party should prevail on appeal." Utah R. App. P. 24(a)(8); *see also State v. Thomas*, 961 P.2d 299, 304–05 (Utah 1998). "[A]ppellants carry the burden to persuade a reviewing court through reasoned, supported argument that the district court committed harmful, reversible error—a burden that necessarily requires the appellant to address the reasoning and basis of the district court's ruling and to explain why that court got it wrong." *Peck v. Peck*, 2020 UT App 14, ¶ 20, 459 P.3d 1033 (Pohlman, J., concurring in part, dissenting in part). Thus, when an appellant's brief "fails to satisfy the minimal requirements of [r]ule 24," we need not discuss the merits of the case. *Smith v. Smith*, 1999 UT App 370, ¶ 8, 995 P.2d 14, *cert. denied*, 4 P.3d 1289 (Utah 2000). And an appellant's claim is "inadequately briefed when the overall analysis of the issue is so lacking as to shift the burden of research and argument to the reviewing court." *Id.* (cleaned up). Our insistence on rule 24 conformity "is not a slavish devotion to form over substance." *Id.* ¶ 9. "Rather, it is explained by our complete inability, given the deficiencies in briefing, to review the merits of the trial court's decision." *Id.*

¶16    Cottam has not satisfied the requirements of rule 24. He makes no attempt to explain why the district court was wrong in its determination that HCQIA is irrelevant to the Hospital Defendants' contractual immunity in this case. Instead, he merely repeats, nearly word for word, the thin argument he made below related to HCQIA and immunity.[1] Cottam's failure to grapple

---

1. Cottam makes additional reference to HCQIA in other parts of his brief. He observes that the Bylaws refer to HCQIA and affirm

(continued…)

with the district court's reasoning on this point renders his briefing inadequate, and we need not discuss the merits of his undeveloped, repeat assertion. *See id.* ¶ 8. Nevertheless, we briefly note that the district court was not obviously wrong. While HCQIA provides a hospital immunity from damages when the hospital engages in a professional review action that complies with HCQIA's standards, *see* 42 U.S.C. § 11111, a plaintiff doctor may not employ the hospital's potential shield of immunity as a sword. The Hospital Defendants here have not asserted HCQIA immunity, and HCQIA is irrelevant to their assertion of the separate contractual immunity afforded them under the Bylaws. Stated another way, HCQIA "does not create a private cause of action," *Hancock v. Blue Cross-Blue Shield of Kan., Inc.*, 21 F.3d 373, 374 (10th Cir. 1994), much less a private cause of action that overrides a hospital's contractual immunity from suit.

¶17　The additional extent of Cottam's argument in his principal brief against enforcement of the Bylaws' immunity provisions consists solely of the following recycled text from his memorandum below:

---

that the Hospital's credentialing and peer review procedures will comply with HCQIA. On that basis, he cites HCQIA and case law developed under it to (1) argue against application of an evidentiary privilege to defeat his claims and (2) identify alleged breaches by the Hospital Defendants of due process protections that he claims he was entitled to through the Bylaws' incorporation of HCQIA standards. Neither of these HCQIA-based arguments hits the mark: Because the district court expressly "[did] not reach" the issue regarding evidentiary privileges, that issue is not properly before us. And because we resolve this appeal on the basis of the Hospital Defendants' contractual immunity from suit, we need not determine which HCQIA due process provisions were incorporated into the Bylaws by reference or whether they were breached.

> We ask the [c]ourt, in the name of fairness, to declare what we all know to be true: There are limits to immunity—the immunity in the [B]ylaws, the immunity in state statutes, the immunity in procedural rules, the immunity in federal statutes— all have limits and those limits are called due process rights under the 14th Amendment of the U.S. Constitution. Those limits are called the implied covenant of good faith and fair dealing. Those limits are called, even in [the Hospital Defendants'] own documents, substantial compliance with principles of fairness.

This paragraph does not meet the briefing requirements of rule 24. It contains no reasoned analysis explaining how the due process protections of the Fourteenth Amendment, which apply as against government entities, *see generally Millet v. Logan City*, 2006 UT App 466, ¶ 10, 147 P.3d 971 (recognizing and discussing "the Fourteenth Amendment requirement of state action" (cleaned up)), *cert. denied*, 168 P.3d 819 (Utah 2007), void the contractual immunity of the private-party defendants in this case. Nor does Cottam's brief explain with reasoned analysis or citation to authority how or why a breach of the implied covenant of good faith and fair dealing or a lack of "substantial compliance with principles of fairness" should void the Bylaws' provisions that grant the Hospital Defendants immunity from suit.

¶18 Strikingly, this is not a case where an argument against application of the Bylaws' immunity provisions was not preserved. Cottam argued below that "any contract that is breached by one party is no longer enforceable by that party" and that a breach by one party "releases the other party from any obligations on their part," an apparent reference to the "first breach rule." *See generally Cross v. Olsen*, 2013 UT App 135, ¶ 25, 303 P.3d 1030 ("Under the first breach rule a party first guilty of a substantial or material breach of contract cannot complain if the

other party thereafter refuses to perform." (cleaned up)). The Hospital Defendants even acknowledged this rule, cited authority for it, and appeared to suggest that if Cottam had pled a material breach of the Bylaws, he might "be able to get around" the immunity provisions of the Bylaws. The district court, however, clearly did not agree with Cottam or the Hospital Defendants on this point.[2] Instead, the court observed that Cottam had "failed to cite any relevant case law regarding the effect of a hospital's breach of its bylaws on its contractual immunity" and that he had "failed to analyze or apply the factual assertions in his Amended Complaint to that case law." On this basis, the court concluded that it was "not enough for [Cottam] to assert breaches of the [B]ylaws and then argue a loss of immunity under an irrelevant federal law," and it granted the Hospital Defendants' motion to dismiss on the basis of their contractual immunity from suit.

¶19 The district court's hesitance to adopt Cottam's undeveloped argument against enforcement of the Hospital Defendants' contractual immunity is understandable. In *Don Houston, M.D., Inc. v. Intermountain Health Care, Inc.*, 933 P.2d 403 (Utah Ct. App. 1997), as here, a doctor sued a hospital after it suspended his surgical privileges. *See id.* at 405. The doctor alleged, "among other things, that [the hospital] had not complied with [its] bylaws in summarily suspending his surgical privileges." *Id.* The district court granted summary judgment in favor of the hospital on the grounds that the hospital had substantially complied with its bylaws and that the hospital was immune from liability under the bylaws. *See id.* On appeal, the

---

2. The court was not required to hold the Hospital Defendants to their apparent legal concession; it was required to reach its own conclusion on the viability of the Hospital Defendants' contractual immunity from suit. *Cf. 1600 Barberry Lane 8 LLC v. Cottonwood Residential O.P. LP*, 2021 UT 15, ¶ 36, 493 P.3d 580 ("Only factual allegations, not opinions or legal conclusions, may be deemed judicial admissions.").

doctor argued that the terms of the immunity provisions of the bylaws did not encompass his claims and that the hospital was, therefore, not immune from suit on his claims. *See id.* at 407. The *Don Houston* court first analyzed the language of the bylaws and concluded that the hospital was "entitled to the immunity from suit provided for" in them. *Id.* at 408. Then the court turned to separately address whether the hospital had substantially complied with the bylaws. *See id.* But it expressly did so only "to demonstrate that [the hospital] prevail[ed] under either theory," explaining that "resolution of the bylaw immunity issue technically resolve[d] [the] appeal." *Id.* In other words, the court said that the hospital's contractual immunity under the bylaws applied regardless of whether the hospital had materially breached its bylaws. *See id.*

¶20    We hasten to add, of course, that in *Don Houston* the court was not asked to opine on whether the first breach rule—or any other doctrine—might operate to void the hospital's contractual immunity once it was established. Thus, *Don Houston* far from forecloses the possibility that a hospital's material breach of its bylaws may void its contractual immunity under those bylaws. But *Don Houston* does demonstrate that this issue is an open question, not one with a self-evidently foregone conclusion as Cottam appears to believe. Indeed, the Hospital Defendants have pointed us to at least one appellate opinion holding that the "absolute immunity" extended to a hospital in its bylaws was not waived by evidence that it had materially breached the due process provisions of its bylaws. *See Estate of Blume v. Marian Health Center*, 516 F.3d 705, 708–09 (8th Cir. 2008) (cleaned up) (applying Iowa law). Moreover, prior to application of the first breach rule, a court would likely need to address whether the promises of immunity and release of liability, which a physician makes to a hospital by accepting its bylaws, and the promise of due process during reappointment and peer review proceedings, which the hospital makes to the physician through those bylaws, are mutually dependent. *See generally Larson v. Stauffer*, 2022 UT

App 108, ¶ 26, 518 P.3d 175 ("The first breach rule provides that when one party materially breaches a provision of a contract, the other party's subsequent failure to perform a specific obligation is excused *if the promises are mutually dependent*." (emphasis added) (cleaned up)). Additionally, any application of the first breach rule would have to grapple with its other implications. Specifically, because the remedy under that rule is usually rescission of the contract, *see, e.g.*, *Cross*, 2013 UT App 135, ¶¶ 25–27, then arguably if the Hospital Defendants were to lose their contractual immunity through a material breach of the Bylaws, Cottam would simultaneously lose his contractual right to due process, as well as any expectation of reappointment.

¶21 Given the foregoing legal landscape, Cottam's oblique and unsupported references in his principal brief to "the implied covenant of good faith and fair dealing" and "substantial compliance with principles of fairness" are insufficient to meet his briefing burden under rule 24 on the issue of whether a material breach of the Bylaws would void the Hospital Defendants' contractual immunity from suit. *See generally Jacob v. Cross*, 2012 UT App 190, ¶ 3, 283 P.3d 539 (per curiam) ("[The appellant] fails to provide any factual or legal basis to support these conclusory statements. As a result, the issues are inadequately briefed because he has completely shifted the burden of researching the record and applicable law to the court."); *Smith v. Smith*, 1999 UT App 370, ¶ 8, 995 P.2d 14 (determining that noncompliance with rule 24 occurs where "the overall analysis of the issue is so lacking as to shift the burden of research and argument to the reviewing court" (cleaned up)), *cert. denied*, 4 P.3d 1289 (Utah 2000).

¶22 We acknowledge that in his reply brief Cottam argues, citing authority, that "[u]nder the first breach rule[,] a party first guilty of a substantial or material breach of contract . . . can neither insist on performance by the other party nor maintain an action against the other party for a subsequent failure to perform" (second alteration and omission in original) (quoting *CCD, L.C. v.*

*Millsap*, 2005 UT 42, ¶ 29, 116 P.3d 366) and that "once [the Hospital Defendants] materially breached [the] Bylaws, [they] lost the protection of the Bylaws and the [immunity] provision(s) they say are determinative here." But this comes too late.[3] "Generally, issues raised by an appellant in the reply brief that were not presented in the opening brief are considered waived and will not be considered by the appellate court." *Brown v. Glover*, 2000 UT 89, ¶ 23, 16 P.3d 540. While this is not true where "an appellant responds in the reply brief to a new issue raised by the appellee in its opposing brief," *id.* ¶ 24, the issue here cannot accurately be described as a new issue raised for the first time in the Hospital Defendants' brief. Instead, it is the very ground on which the district court based its dismissal of Cottam's claims. Cottam's failure to meaningfully address this dispositive issue in his principal brief is a failure to comply with rule 24 through "reasoned analysis supported by citations to legal authority and the record, [of] why [Cottam] should prevail on appeal." Utah R. App. P. 24(a)(8); *see also State v. Johnson*, 2017 UT 76, ¶ 71, 416 P.3d 443 (Lee, J., concurring) ("The failure to raise such a challenge in the [opening] brief amounts to forfeiture. That principle is deeply embedded in our case law. We routinely decline to consider claims of error raised for the first time in a reply brief or at oral argument." (cleaned up)); *Kendall v. Olsen*, 2017 UT 38, ¶¶ 11, 13, 424 P.3d 12 ("[The appellant] failed to address the standing issue at all in his opening brief on appeal. [His] opening brief speaks exclusively to the merits of [his] claims, which the district court addressed in the alternative. But there is not a word on standing in the opening brief on appeal, and that is problematic. . . . [He] does address standing in his reply brief. But that was too late.").

¶23    Because Cottam's briefing does not comply with the requirements of rule 24, he has not met his burden of persuasion on appeal. *See Bank of Am. v. Adamson*, 2017 UT 2, ¶ 12, 391 P.3d

---

3. It also does not address the background legal landscape on this issue that we outlined above.

196 ("An appellant who fails to adequately brief an issue will almost certainly fail to carry its burden of persuasion on appeal." (cleaned up)). We thus affirm the district court's order of dismissal on the basis of the Hospital Defendants' contractual immunity from suit.[4] Where the district court decided to apply the Hospital Defendants' contractual immunity on the basis of an inadequate argument against such application and not based on a definitive resolution of the underlying legal issue, our affirmance of that decision based on inadequate briefing likewise leaves the underlying legal issue unresolved. Whether a hospital's material breach of its bylaws voids the hospital's contractual immunity from suit granted under those bylaws must be resolved another day.[5]

---

4. Even if Cottam had met his briefing burden and burden of persuasion on this issue and convinced us that a material breach of the Bylaws by the Hospital Defendants voids their contractual immunity from suit, he has offered no argument and cited no legal authority to demonstrate that the Hospital Defendants' alleged breaches of the Bylaws (which he outlines in ample detail) were actually *material*. This too constitutes a fatal failure to adequately brief an independent, alternative basis for the district court's dismissal of his claims, namely, its determination that, "[w]hile [the Hospital Defendants] may not have adhered to every technical provision of the [B]ylaws, they substantially complied with them." *See generally Brinton v. IHC Hosps., Inc.*, 973 P.2d 956, 965 (Utah 1998) ("[M]ere technical violations of procedures or policies in administering peer review will not give rise to a cause of action.").

5. Whatever contractual immunity from suit a hospital may have under its bylaws is distinct from the statutory immunity from liability granted to hospitals in this same context. *See* Utah Code § 58-13-5(7). This opinion resolves no questions regarding the contours of that statutory immunity either.

CONCLUSION

¶24    Cottam was warned by the district court that he had not sufficiently addressed the Hospital Defendants' asserted defense of contractual immunity and release of liability. Yet Cottam failed to provide any appropriate argument or authority on this point in his principal brief. Cottam has inadequately briefed this dispositive issue, and he has not carried his burden of persuasion on appeal. We affirm the district court's dismissal of Cottam's claims.

_____